IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DWAUNE MASON** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER NICHOLAS KRUCZAJ, et al.** | : | **NO. 13-6512** |
| | : | |

**MEMORANDUM**

L. FELIPE RESTREPO, J.                                                                                    JANUARY 12, 2016

Plaintiff, Dwaune Mason ("Mason"), initiated this action against Officer Nicholas Kruczaj ("Kruczaj"), Unknown Officers, and the City of Chester ("City") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 ("§ 1983"), for violations of Mason's federal constitutional rights.  Mason contends that his constitutional rights were violated when he was unlawfully detained, arrested, and imprisoned for an armed robbery that he did not commit.  Mason also brings constitutional claims and state tort claims against Kruczaj for malicious prosecution.   For the following reasons, Defendants' motion will be granted and summary judgment will be entered in Defendants' favor on all remaining counts.

I.       **FACTUAL BACKGROUND**[1]

On the evening of November 11, 2011, Chester City Police Officer Kruczaj responded to a call reporting an armed robbery.  JS ¶¶ 4-5.  Present at the scene was the victim, James Frost ("Frost"), who stated to Kruczaj that he had been robbed by two African American men at

---

[1] In regards to the Defendants' summary judgment motion, the parties have submitted a Joint Statement of Stipulated Facts (cited herein as "JS") and a Joint Appendix on Motion for Summary Judgment (cited herein as "JA").

1

gunpoint. JS ¶¶ 3, 6. Frost told Kruczaj that his assailants were between 5'8" and 5'10" and that one of the perpetrators wore black clothing and wielded a handgun, and the other was wearing a grey hooded sweatshirt. JS ¶¶ 7-9. Further, Frost reported that he had walked around the corner to a convenience store while waiting for the police to arrive and saw people who resembled the perpetrators standing outside the store. JS ¶ 10. Kruczaj and Frost thereafter went to the convenience store and reviewed the store's security camera footage. JS ¶ 11. Frost identified a portion of the surveillance footage showing three young men as depicting his attackers and, according to Kruczaj, stated: "that's them." JS ¶¶ 12-13, 15. Moreover, Frost informed Kruczaj that the video showed "the black male subject wearing the gray Polo hoodie" was "with the actor with the gun." JS ¶ 16. Of the three men in the video, one was Mason, who had on a black shirt and dark jeans, and one was wearing a grey hooded sweatshirt. JS ¶¶ 14, 18-19.

Two hours later, Mason and his three friends were walking near the scene of the robbery, which was approximately two blocks from the store where Kruczaj and Frost had reviewed the surveillance video. JS ¶¶ 21-22. Krucjaz was patrolling the area when he spotted Mason and his friends and stopped the group. JS ¶¶ 20, 23-24. At the time of the stop, Mason was wearing a black coat and one of his three friends was wearing a grey or white hooded sweatshirt. JS ¶¶ 25-26. Krucjaz detained the group for approximately fifteen minutes until Captain James Chubb ("Chubb") escorted Frost to the scene to attempt an identification of potential suspects. JS ¶¶ 27-28. Neither Mason nor his friends were handcuffed during the stop. JS ¶ 30. Upon arrival, Chubb and Frost remained in Chubb's vehicle at a distance of about ten to thirty feet from where Mason and his friends were lined up on the street or on the sidewalk. JS ¶¶ 29, 31-32. The windows of the vehicle were closed and Kruczaj communicated with Chubb only through their police radios. JS ¶ 33.

Recognizing one of the men in the group as his assailant, Frost identified the individual standing next to Mason, JS ¶¶ 34-35, and Chubb then transmitted over the radio that the "tall" person was the suspect, JS ¶¶ 39-42.  Mason agrees that he was "the tall guy" among the group of men that was stopped by Kruczaj.  JS ¶ 40.  Following the field identification, Frost left the scene and did not witness any arrest or realize that there was a miscommunication about the identification until one or two days later.  JS ¶¶ 44, 59.  Frost subsequently went to the police station to fill out and sign a statement regarding his identification of the robbery suspect.  JS ¶¶ 50-52.  After leaving the police station, however, Frost decided not to press charges for the robbery and left a voicemail with the police station stating that he did not want to go through with the prosecution.  JS ¶¶ 54-55.

Not realizing that Mason, though he was the tallest of the group, was not the person Frost identified to Chubb, Officer Ross ("Ross") arrested Mason and took him into custody.[2]  JS ¶¶ 42, 45, 59.  Ross performed a routine prisoner search of Mason and discovered two Percocet pills, illegally in his possession.  JS ¶¶ 46-48.  That evening, Kruczaj prepared a criminal complaint and affidavit of probable cause, charging Mason with robbery, theft by unlawful taking, firearms carried without a license,[3] simple assault, and possession of a controlled substance.  JS ¶ 56.  Plaintiff was arraigned the following morning, November 12, 2011, and, unable to post bail, was detained at the George Hill Correctional Institute until his preliminary hearing on February 12, 2012.[4]  JS ¶¶ 57-58, 64.

---

[2]    Officer Ross was also present at the scene when Kruczaj stopped Mason and his friends.  JA ¶ 179.

[3]    It appears that the gun allegedly used to perpetrate the robbery of Frost was not discovered on Mason's person at the time of his strip search.  JA ¶¶ 165-66.  See also Pl.'s Br. 12; Pl.'s Opp. 4.

[4]    The parties are in agreement that due to the miscommunication and misidentification, JS ¶ 53, Plaintiff was incarcerated for nearly three months for a crime he did not commit, JS ¶ 58.

A day or two after the arrest, Frost was approached by Mason's brother, Omar. JS ¶ 59. Frost was informed that Plaintiff was 6'2" and shown a picture of him. JS ¶ 60. Following the meeting with Omar, Frost believed that the wrong person was arrested for the robbery, but did not contact the Chester Police Department, including Kruczaj. JS ¶¶ 61-63. Frost met with Mason's family members on another occasion and, at Omar's urging, attended Mason's preliminary hearing. JS ¶¶ 64-66. Because Frost testified at the hearing that he believed the wrong person had been arrested for the robbery, Kruczaj requested that the prosecutor withdraw all charges against Mason. JS ¶¶ 64-65, 74-76. Consequently, all of the criminal charges against Mason were dismissed. JS ¶¶ 65, 76.

## II.     **PROCEDURAL HISTORY**

Plaintiff filed his original Complaint against Defendants on November 8, 2013. Plaintiff's claims against Kruczaj include: (1) Fourth Amendment violations of false detention, false arrest, false imprisonment (Count I); (2) malicious prosecution under both § 1983 and state law (Count III); and (3) intentional infliction of emotional distress (Count V[5]). ECF No. 1. Against the City of Chester, Plaintiff brought a claim under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978), for failure to train, supervise and discipline (Count II). Id. Defendants filed a motion for summary judgment as to all claims against them on October 24, 2014. ECF No. 18. In his response to Defendant's motion, Mason withdrew his claim of intentional infliction of emotional distress (Count V) against Kruczaj. ECF No. 19. See also 1/19/2015 Hr'g Tr. 1:25-2:4 ("Tr."). Both parties filed additional papers in support of their respective positions, ECF Nos. 20-21, and Defendants submitted additional motions in anticipation of trial, ECF Nos. 22-27.

---

[5]     While it is listed in the Complaint as "Count V", the Complaint goes directly from Count III to Count V, so there is no "Count IV."

On January 8, 2015, during a telephone status conference with the Court, Plaintiff withdrew his Monell claim against the City (Count II), which Plaintiff confirmed during oral arguments the following day.  Tr. 3:9-14.  The Court also heard oral argument on all other pending motions on January 9, 2015.  ECF No. 28.  Remaining before the Court are Plaintiff's claims for false detention, false arrest, and false imprisonment pursuant § 1983 (Count I) and a claim of malicious prosecution pursuant to § 1983 and  state law (Count III) against Kruczaj.  Id. at 4:2-7.  Defendants' summary judgment motion is ripe for disposition.

III. **LEGAL STANDARD**

On a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014) (citations omitted).  The moving party "bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrates that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations and quotation marks omitted).  An issue is genuine only if enough evidence exists for a reasonable jury to find for the nonmoving party on the issue. Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

To overcome summary judgment, the nonmovant must sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial."  Blunt, 767 F.3d at 265.  However, "[b]are assertions, conclusory allegations[,] or suspicions" are insufficient and the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 268-69 (3d Cir. 2014) (citations and quotation marks omitted).  Summary judgment is proper when "there is no genuine issue as

5

to any material fact [such] that the moving party is entitled to a judgment as a matter of law." Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Fed. R. Civ. P. 56(a)).

IV. **DISCUSSION**

Section 1983 imposes liability on any person who, acting under color of state law, deprives a citizen of their constitutional rights. 42 U.S.C. § 1983.[6] However, § 1983 does not create, on its own, substantive rights; rather, it provides remedies for rights established under the Constitution or by federal statute. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)). The first step in analyzing a § 1983 claim, therefore, is to determine "the exact contours of the underlying right said to have been violated and . . . whether the plaintiff has alleged a deprivation of a constitutional right at all." Id. Even if a constitutional right is found to be violated, the state actor is immune from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Therefore, in the second step, the Court must decide whether a right is clearly established by considering if "it would be clear to a reasonable officer that his conduct was unlawful in . . . light of the specific context of the . . . circumstances confronting the officer" at time of the alleged violation. Id. at 253.

Plaintiff bases his § 1983 claim on four separate and related constitutional violations: false detention; false arrest; false imprisonment; and malicious prosecution. See generally Compl. Although there is no dispute that Kruczaj's initial stop of Mason was justified, see Tr. 9:7-10, Plaintiff alleges that Kruczaj exceeded the scope of a lawful investigatory stop by

---

[6] Specifically, the statute provides that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983.

"refus[ing] to let [] [Mason] go after finding no weapons or illegal contraband on" him.  Pl.'s Suppl. Opp. 2 (ECF No. 21).  Further, Plaintiff asserts that his detention *after* the frisk required probable cause, which Kruczaj did not have, Tr. 11:7-20, and consequently, the show-up identification and subsequent arrest and prosecution were violations of Plaintiff's Fourth Amendment right.  Pl.'s Opp. 7-8 (ECF No. 19).  Moreover, Plaintiff contends that Kruczaj is not entitled to qualified immunity because there can be no probable cause, or a reasonable belief of probable cause, to justify Kruczaj's seizure of Mason when Mason's height was inconsistent with Frost's earlier estimate of the perpetrator's height.  Id. at 11-12; see also Tr. 15:10-14.

Defendants argue that summary judgment is warranted because Kruczaj's reasonable suspicion that Mason was involved in the robbery is sufficient to justify detaining him for the show-up identification.  Defs.' Br. 12-13(ECF No. 18).  Further, the perceived positive identification by Frost established probable cause for Kruczaj to arrest Mason and initiate criminal charges.  Id.  Regardless of whether Kruczaj lacked probable cause to arrest Mason, Defendants assert that probable cause for prosecuting Mason existed on the basis of the illegal controlled substance that was found on his person at the time of arrest.  Id. at 12-14.  In the alternative, Defendants contend that even if a constitutional violation took place, Kruczaj is entitled to qualified immunity for the § 1983 violations due to his reasonable but mistaken belief that Mason had been identified as the perpetrator of the robbery, id. at 15, and the state law claims should be dismissed under the Political Subdivision Tort Claims Act, which immunizes police officers from acts performed within the scope of their duties, id. at 25-26.

### A. Investigatory Stop and Arrest

In bringing a claim for false detention and arrest pursuant to § 1983, the plaintiff must show that the detention was unlawful and the arrest was made without probable cause.  James v.

City of Wilkes-Barre, 700 F.3d 675, 680, 81-82 (3d Cir. 2012).  A § 1983 claim based on false detention and arrest is grounded in the Fourth Amendment, which protects private citizens from unreasonable searches and seizures by the government.  Terry v. Ohio, 392 U.S. 1, 20 (1968).  For a seizure to be reasonable, the Fourth Amendment requires that the seizure be "effectuated with a warrant based on probable cause."  United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002).

In Terry, however, the Supreme Court recognized an exception to the warrant requirement, permitting police officers with "reasonable, articulable suspicion" of possible criminal activity to conduct an investigatory stop.  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a Terry stop."  United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006) (citations and internal quotation marks omitted).  Further, the reasonable suspicion standard considers "the totality of the circumstances" faced by the officer and an officer's "reasonable mistake of fact does not violate the Fourth Amendment."  Id. at 397-398 (citations and internal quotation marks omitted).

To determine whether an investigatory stop was executed within the bounds of the Fourth Amendment, the Supreme Court prescribed a dual inquiry into "whether the officer's action was justified at its inception," in that it was supported by reasonable suspicion, and "whether the manner in which the stop was conducted was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 20; see United States v. Johnson, 592 F.3d 442, 452 (3d Cir. 2010).  A lawful stop and frisk under Terry is a seizure that may elevate into a de facto arrest, depending on "the reasonableness of the intrusion."  United

States v. Edwards, 53 F.3d 616, 619-20 (3d Cir. 1995).  Only if the Terry stop escalates into an arrest, then the seizure must be justified by probable cause.  United States v. Sharpe, 470 U.S. 675, 684 (1985).

Plaintiff argues that an investigatory stop is limited to a frisk for weapons and Kruczaj's detention of Mason during the street line-up exceeded a lawful Terry stop, requiring probable cause.  Pl.'s Opp. 7; Pl.'s Suppl. Opp. 1.  Contrary to Plaintiff's interpretation, however, the "purpose underlying a Terry stop [is] investigating possible criminal activity" and police officers may engage in "a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it [is] necessary to detain the defendant."  Sharpe, 470 U.S. at 685-686 (investigatory stop was reasonable, where a suspect was stopped and frisked for weapons by a police officer, detained for 15 minutes, and further investigated by an agent of the Drug Enforcement Administration); see also United States v. McGrath, 89 F.Supp.2d 569, 578 (E.D. Pa. 2000) (detention for "a period of approximately one hour" to conduct a show-up identification within bounds of a permissible Terry stop).  Courts "assessing whether a detention is too long in duration to be justified as an investigative stop" are not to consider whether there was "some alternative means by which the objectives of the police might have been accomplished . . . but whether the police acted unreasonably in failing to recognize or to pursue it."  Sharpe, 470 U.S. at 686-687.

Here, Kruczaj recognized Plaintiff and his friends from surveillance footage of the perpetrators, wearing similar clothes as in the video and in the vicinity of where the crime had occurred.  JS ¶¶ 22-26.  The parties agree that a period of only 15 minutes had passed from when Plaintiff was initially stopped to when Chubb and Frost arrived on the scene.  JS ¶¶ 28-30.  Based on the undisputed facts summarized above, Kruczaj had reasonable suspicion to believe

9

that Plaintiff and his friends were involved in the robbery, Tr. 9:7-10, and that a detention of the group was warranted to await the arrival of Frost, who was only a short distance away, to confirm or dispel Kruczaj's suspicions that Mason and the others perpetrated the robbery. Because Kruczaj's stop and detention of the Plaintiff did not elevate to a de facto arrest and the officers acted reasonably in conducting their investigation, Plaintiff's constitutional rights were not violated as a result of the Terry stop.

Even if the Terry stop was lawful, Plaintiff argues that there is a factual dispute as to whether there was probable cause for Mason's arrest and consequently, summary judgment is inappropriate for the§ 1983 claim based on the false arrest. Pl.'s Br. 9-10; Pl.'s Opp. 3-4; Tr. 15:10-25. Kruczaj could not have had probable cause that Mason was the perpetrator, Plaintiff contends, when Kruczaj was aware of the height differentials between Frost's descriptions of the suspect and Mason. Tr. 11:7-25. Defendants disagree, citing Kruczaj's belief at the time, albeit a mistaken one, that Frost had identified Mason as the suspect, which alone gives rise to probable cause to arrest Mason. Defs.' Br. 17; Tr. 16:24-17:19.

A finding of probable cause is appropriate where "there is a fair probability that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (citations and quotation marks omitted). Indeed, the "evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005). In considering whether there was probable cause, courts look at "the facts and circumstances within the arresting officer's knowledge" at the time of arrest to determine whether these facts and circumstances "are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person arrested." Wilson , 212 F.3d at 789. Further, courts need not perform a retrospective analysis of

whether the "officers correctly resolve[d] conflicting evidence or that their determinations of credibility[] were . . . accurate." Id. at 603.  Officers must make probable cause determinations "'on the spot' under pressure" and are not required to engage in a "fine resolution of conflicting evidence [as] [under] a reasonable doubt or even a preponderance standard." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) (citing Gerstein v. Pugh, 420 U.S. 103, 121 (1975).  Hence, "the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime." Wright, 409 F.3d at 602.

The circumstances leading up to Mason's arrest were: (1) Mason was present in the surveillance footage which Frost identified as showing his attackers, JS ¶¶ 12, 18; (2) Kruczaj stopped Mason and his friends because he recognized them from the surveillance video, JS ¶ 24; (3) the clothing worn by Mason and one of his friends matched the descriptions Frost gave to Kruczaj about his attackers, JS ¶¶ 14, 16, 25-26; (4) Mason was discovered approximately two blocks from the scene of the robbery, JS ¶ 21; and (4) Chubb's radio communication identified the "tall" person as a perpetrator and Mason was the tallest in the group, JS ¶¶ 39-42.  Based on the totality of information available to Kruczaj at the time of Mason's arrest, Kruczaj's belief that Mason had committed the robbery was reasonable.  The probable cause determination depends only on the information that was available to the arresting officer at the time of the arrest.  Accordingly, Frost's intent to identify another individual as the perpetrator is irrelevant to the analysis, since the only information communicated to Kruczaj was that "the tall guy" had been identified – and Mason was the tallest of the group.

Further, this Court rejects Plaintiff's argument that the height differential between Frost's initial descriptions of the suspect and Mason would have made a reasonable officer doubt Frost's on-site identification.  Officers are not held to a stringent standard in resolving conflicting

11

evidence as long "their belief was not unreasonable in light of the information the officers possessed at the time." Wright, 409 F.3d at 603. Although the height differential is "a factor in the probable cause analysis, it is not dispositive" because courts must look at the "totality of circumstances." Id. Frost's perceived identification of Mason as his perpetrator, despite the difference from the initial height estimate Frost gave, combined with all the other pieces of circumstantial evidence pointing to Mason as the suspect is more than sufficient to give rise to probable cause to arrest Mason.

Because Mason has failed to set forth specific facts showing that there is a genuine issue for trial, summary judgment is appropriate on Mason's § 1983 claims. Having evaluated the undisputed facts that are material to evaluating the Terry stop and subsequent arrest, Kruczaj is entitled to judgment as a matter law. Kruczaj has reasonable suspicion to stop and detain Mason long enough to allow Frost to attempt an identification – an encounter that did not morph into a de facto arrest. Furthermore, based on the perceived identification, the surveillance footage evidence, the similarities in the clothing, and despite the alleged disparity between Mason and the initial height estimate, Kruczaj had probable cause to arrest Mason.[7] Accordingly, Defendants' Motion for Summary Judgment will be granted with respect to Plaintiff's claims for false detention, false arrest, and false imprisonment.

### B. Malicious Prosecution

Plaintiff also asserts claims of malicious prosecution under § 1983 and pursuant to Pennsylvania common law. See Compl. To bring a claim of malicious prosecution pursuant to § 1983, the " plaintiff must show (1) the defendants initiated a criminal proceeding; (2) the

---

[7] "The Court in Baker made it clear an arrest based on probable cause could not become the source of a claim for false imprisonment." Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citing Baker v. McCollan, 443 U.S. 137, 143-44 (1979)). Because there was probable cause to attest Mason, the false imprisonment claim premised on that arrest must be dismissed.

criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (citations and quotation marks omitted). Under Pennsylvania law, a plaintiff alleging a malicious prosecution claim need only prove the first four elements of its federal counterpart. Merkle v. Upper Dublin School Dist., 211 F.3d 782, 791 (3d Cir. 2000). In determining whether probable cause existed to initiate prosecution, courts must consider the totality of circumstances and the "facts [that] were available to [the] [officer] when he made his discretionary decision to initiate the proceedings" against the plaintiff. Halsey v. Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014). However, whether or not "a person is later acquitted of the crime for which she or he was arrested" is irrelevant to the courts' analysis. Wright, 409 F.3d at 602. Furthermore, where plaintiff is charged for multiple violations of law which result in his or her arrest and subsequent prosecution, probable cause for any of the charges bars plaintiff's malicious prosecution claims as to all charges. Startzell v. City of Phila., Pa., 533 F.3d 183, 204 n.14 (3d Cir. 2008).

     Importantly, Plaintiff did not address the malicious prosecution claims in his summary judgment papers. Based solely on Plaintiff's rebuttal during oral arguments, this Court concludes that the parties only disagree with respect to the third element of the federal and state malicious prosecution claims: whether Mason's prosecution was **initiated** with probable cause. Tr. 22:15-23:13. Defendants contend that Kruczaj had probable cause to believe Plaintiff was the perpetrator of the robbery, and as such, Kruczaj acted reasonably in initiating proceedings against Plaintiff. Defs.' Br. 15. Alternatively, Defendants argue, probable cause existed to

prosecute Mason for his possession of a controlled substance, Percocet, which was found on Mason's body at the time of the search incident to his arrest. Id. at 18.

As stated above, Plaintiff fails to show that Kruczaj lacked reasonable suspicion for detaining and probable cause for arresting Mason because a reasonable officer in Kruczaj's position could have believed Mason was the perpetrator of the robbery. According to the undisputed facts, Kruczaj's mistaken belief as to probable cause was not corrected subsequent to Mason's arrest, because Frost "did not realize at the time he wrote [his] statement [Kruczaj] had arrested the wrong person," JS ¶ 51, and Frost "did not tell Officer Kruczaj or anybody else on the night of the arrest that they had arrested the wrong person." JS ¶ 53. On the **same night** as the arrest, Kruczaj initiated the criminal prosecution of Mason by preparing the criminal complaint charging him with various crimes, JS ¶ 56. Additionally, recognizing that information obtained subsequent to the initiation of the criminal proceeding is irrelevant to a claim of malicious prosecution, the Court notes that Frost did not inform Kruczaj that he was mistaken about Mason until the day of Mason's preliminary hearing, JS ¶¶ 56, 62-63. In other words, Kruczaj did not learn of any new evidence, aside from the facts which initially gave rise to probable cause to arrest Mason, which would have vitiated the probable cause to bring charges against Mason. Again, there are no material facts in dispute. The only dispute is how the law should be applies to those facts.

Here, Kruczaj: (1) had probable cause to arrest Mason; (2) initiated the criminal proceedings against Mason the same night of the arrest; and (3) was not aware of anything between arresting Mason and initiating the charges against him that would have disabused him of his belief about the existence of probable cause. In light of these undisputed circumstances, Defendants' motion for summary judgment on the malicious prosecution claim will be granted.

As an alternative argument, Defendants contend that Plaintiff's malicious prosecution claims must fail because Kruczaj had probable cause to charge Plaintiff for a separate crime of possessing a controlled substance. Defs.' Br. 18; Tr. 22:1-10. In this Circuit, probable cause to prosecute for one offense "disposes of [plaintiff's] malicious prosecution claims with respect to all of the charges brought against" the plaintiff.[8] Wright, 409 F.3d at 604; see also Startzell, 533 F.3d at 204 n.14 ("[w]e need not address whether there was probable cause with respect to the remaining charges . . . for the establishment of probable cause as to any one charge is sufficient"). At the time of his arrest, Mason was found carrying Percocet pills and admitted to possessing Percocet illegally. JS ¶¶ 46-48. Because Kruczaj had probable cause to charge Mason for possession of a controlled substance, Plaintiff is effectively barred from bringing malicious prosecution claims as to rest of the charges filed against him.

As a final basis for dismissing Plaintiff's malicious prosecution claims, this Court concludes that Plaintiff waived his claims of malicious prosecution by failing to respond to Defendants' arguments on these claims. Where a nonmoving party on "a motion for summary

---

[8] Defendants noted in their summary judgment papers that a later Third Circuit ruling on the issue of malicious prosecution conflicted with the Circuit's decision in Wright. Defs.' Br. 19. In Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007), while recognizing probable cause existed to charge the appellee for making terroristic threats, the Court of Appeals permitted a malicious prosecution claim to proceed for all the other charges that had also been brought against the appellee. This apparent conflict between its two decisions was explained by the Third Circuit as being due to the factual distinctions between the two cases. In Wright, as in our case, officers had "probable cause to arrest the plaintiff in the first place, and their involvement apparently ended at the time of the arrest," Johnson, 477 F.3d at 84. Further, the Third Circuit distinguished Wright from Johnson by noting that the malicious prosecution claim in Johnson involved "alleged fraudulent fabrication of baseless charges," such that the "initiation of criminal proceedings against [appellee] was more extensive and lasted beyond the issuing of an affidavit of probable cause for his arrest and the arrest itself." Id. The Third Circuit was clear its decision "does not diminish the precedential status of" the holding of Wright, Johnson, 477 F.3d at 82 n.9, and reiterated in a later decision that the application of Johnson is limited to "only where the circumstances leading to the arrest and prosecution are intertwined," Startzell, 533 F.3d 204 n.14. In the instant case, Plaintiff is not alleging Kruczaj fabricated evidence or that he was involved in initiating the proceedings beyond the arrest itself ("it is [Plaintiff's] position that the found Percocet was only a search incident to arrest," Tr. 22:16-18). Accordingly, this Court finds that Wright is the applicable precedent for these circumstances.

judgment has the burden of persuasion, and the moving party has identified sufficient facts of record to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant." Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988). Consequently, a failure to counter the defendant's challenges to the legal sufficiency of the plaintiff's claims "constitutes an abandonment of these causes of actions and essentially acts as a waiver of these issues" by the plaintiff. Skirpan v. Pinnacle Health Hospitals, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010) (collecting cases); see also Campbell v. Jefferson Univ. Physicians, 22 F. Supp. 3d 278, 287 (E.D. Pa. 2014); Diodato v. Wells Fargo Ins. Services, USA, Inc., 44. F. Supp. 3d 541, 556 (M.D. Pa. 2014). Plaintiff did not address, in either of his papers responding to Defendants' summary judgment motion, his claims of malicious prosecution and failed to develop during oral arguments the legal and factual basis to counter Defendants' challenges of these claims.

For all of the reasons stated above, Defendants' motion for summary judgment will be granted with respect to the federal and state malicious prosecution claims.

### C. Qualified Immunity

Even if this Court were to agree that Kruczaj lacked probable cause to detain, arrest, and prosecute Mason, in violation of Mason's Fourth Amendment rights, Defendants contend they are entitled to qualified immunity for Plaintiff's § 1983 claims because Kruczaj's mistaken belief of probable cause is reasonable. Defs.' Br. 21-25. Plaintiff disagrees, stating that Kruczaj's mistake was unreasonable in light of the fact that no gun was found on Mason to implicate him in an armed robbery of Frost and due to the height differential between Frost's initial descriptions of the perpetrator and Mason. Pl.'s Opp. 19-20; Pl.'s Suppl. Opp. 4-5.

Police officers are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Messerschmidt v. Millender, 132 S. Ct. 1235 (2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  Qualified immunity applies when police officers "perform their duties reasonably" but make "a mistake of law, a mistake of fact, or . . . on mixed questions of law and fact." Pearson, 555 U.S. at 231.  A clearly established right makes "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).   That is, courts inquire into the "objective legal reasonableness of the action," Pearson, 555 U.S. at 244, by considering "existing precedent [that] have placed the statutory or constitutional question beyond debate," George v. Rehiel, 738 F.3d 562, 572 (3d Cir. 2013).  Whether or not an officer's conduct, as alleged by a plaintiff, violates clearly established law is "essentially a legal question" for the courts to decide and should be decided before trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see Hunter v. Bryant, 502 U.S. 224, 228, (1991).

Assuming arguendo that Mason was arrested without probable cause in violation of his constitutional rights, Defendants are immune from suit if they "demonstrate that no genuine issue of material fact remains as to the objective reasonableness of the defendant's belief in the lawfulness of his actions." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (citations and quotation marks omitted).  "Under settled law, [Defendants] . . . are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest." Hunter, 502 U.S. at 228.

17

Viewing the facts in the light most favorable to Plaintiff, even if there was a height differential of five inches[9] between Mason and the actual criminal suspect, police officers are not required to "resolve conflicting evidence" where the totality of the circumstances give rise to probable cause. Wright, 405 F.3d at 603. Moreover, Kruczaj did not act unlawfully by relying on Chubb's confirmation that Frost had identified Mason as the perpetrator. A show-up identification, as conducted in the case at hand, may properly be relied on by officers if the witness had an opportunity to observe the defendant closely, the initial description given by the witness was accurate, the witness was certain of his or her identification of the suspect, and only a short time had passed between the crime and the witness' identification. Vazquez v. Rossnagle, 163 F. Supp. 2d 494, 498 (E.D. Pa. 2001), aff'd, 31 F. App'x 778 (3d Cir. 2002); see also United States v. Gaines, 450 F.2d 186, 197 (3d Cir. 1971); Young v. City of Wildwood, 323 F. App'x 99, 102 (3d Cir. 2009). Here, in their initial meeting, Frost gave Kruczaj consistent descriptions of the robbers, identified them from the surveillance footage with a high level of certainty, and immediately picked out his attacker at the show-up identification. JS ¶¶ 7-13, 34. In addition, at the time Frost identified his assailant to Chubb, only two hours had elapsed since the robbery. JS ¶¶ 21, 28-36. Chubb then relayed the mistaken information to Kruczaj and the facts are undisputed that at the time of the on-site identification, neither Frost nor any of the officers involved were aware that there had been a misidentification. JS ¶¶ 36-44. An officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." Merkle, 211 F.3d at 791 n.9. Rather, a reasonable police officer in Kruczaj's position at the time of Plaintiff's arrest could have believed, that under clearly established law, the arrest was lawful. On this basis, Defendants are entitled to qualified

---

[9] Mason alleges that Frost described his attackers as between 5'8" and 5'10," JS ¶ 9, but Mason is 6'1," JS ¶ 40.

immunity for Plaintiff's claims of false detention, false arrest, and false imprisonment brought pursuant to § 1983.

As to the claim of malicious prosecution, this Court discussed above that there must be a showing that Defendants proceeded to prosecute Plaintiff without probable cause. Again, the parties do not dispute that Kruczaj was unaware Mason had been mistakenly identified as the perpetrator until the day of the preliminary hearing, which occurred several months after Kruczaj initiated the prosecution by filing the criminal complaint. JS ¶¶ 53-59, 62-64. Even if Kruczaj did not have actual probable cause to prosecute Plaintiff, Kruczaj's mistaken belief of probable cause that Mason was the perpetrator of the attack on Frost reasonably leads to probable cause to prosecute Mason, given Kruczaj did not have any information to the contrary until the day of the preliminary hearing. Alternatively, Kruczaj had probable cause to prosecute Plaintiff for the crime of possession of a controlled substance. Where the facts are similar to the circumstances in Wright, the establishment of probable cause to initiate criminal prosecution for one charge establishes probable cause for any other charge. Johnson, 477 F.3d at 84. "Because the Defendant Officers established probable cause for at least one of the criminal charges in initiating a prosecution against [Plaintiff], they did not deprive [Plaintiff] of any clearly established constitutional right, and thus are entitled to qualified immunity for their actions." Posey v. Swissvale Borough, 2013 WL 989953, at *10 (W.D. Pa. Mar. 13, 2013).

Setting aside Plaintiff's inability to show that Kruczaj lacked probable cause in detaining, arresting, and initiating criminal charges against Mason, Defendants are entitled to qualified immunity for the § 1983 claims. Accordingly, Plaintiff's § 1983 claims cannot survive summary judgment.

V.     **Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted, and the remaining claims against Defendants will be dismissed.